UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES WILLIAMS BEY,<br><br>Plaintiff<br><br>v.<br><br>PENNSYLVANIA BOARD OF<br>PROBATION AND PAROLE, et al.,<br><br>Defendants | CIVIL ACTION NO. 1:10-CV-02597<br><br>(CAPUTO, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

This is a prisoner civil rights action, initiated upon the filing of a complaint in this matter by Plaintiff Charles Williams Bey on December 21, 2010. (Doc. 1). At all times relevant to the complaint, Plaintiff has been incarcerated at the State Correction Institution-Coal Township ("SCI-Coal Township") in Northumberland County, Pennsylvania. Currently pending before the Court is a supplemental motion for summary judgment filed by the two remaining Defendants in this matter, SCI-Coal Township employees Linda Chismar and Mr. Vivian. (Doc. 113). For the reasons stated below, it is respectfully recommended that the motion be denied.

**I.   BACKGROUND**

On November 21, 2003, Plaintiff was sentenced to serve between 6 and 12 years in prison by the Court of Common Pleas of Erie County after pleading guilty to drug-related crimes. (Doc. 83, at 23). Since Plaintiff first became eligible for parole in July of 2010, the Pennsylvania Board of Probation and Parole ("PBPP") has continuously denied Plaintiff's requests for parole. (Doc. 1, at 2; Doc. 69-5, at 16-17). Plaintiff alleges that PBPP officials told him at his initial parole hearing that in rendering its decision, the PBPP would review

"whether [Plaintiff] completed a treatment program for substance abuse therapeutic community." (Doc. 1, at 2). Specifically, the Pennsylvania Department of Corrections ("DOC") prescribed that Plaintiff complete a treatment program as one of the criteria for Plaintiff to be recommended for parole. (Doc. 69-5, at 33-37). Although Plaintiff completed all other DOC criteria, he refused to enroll in a treatment program at SCI-Coal Township on the basis that the prison's treatment options are incompatible with his religious beliefs.[1] (Doc. 61, at 1). Plaintiff is a Moorish American, one who belongs to the Moorish Science Temple of America.[2] (Doc. 61, at 1). Consequently, the DOC refuses to recommend that

---

[1] Plaintiff initially joined the waiting list to enroll in the treatment program but withdrew upon touring the program's facilities and determining that it would violate his religious beliefs. (Doc. 69-5, at 19).

[2] In *Great Seal Moorish Science Temple of America, Inc. v. New Jersey*, Judge Pratter of the United States District Court for the Eastern District of Pennsylvania described the Moorish Science Temple of America as follows:

> The Moorish Science Temple of America was founded by Timothy Drew, a/k/a Noble Drew Ali, in 1913. . . . Drew preached that all African-Americans are of Moorish descent and thus are not citizens of the United States. *See United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003). Drew instructed his followers that all "Moorish Americans" must carry a "Moorish passport" bearing one's "real" name, which was often created . . . by adding names that Drew claimed corresponded to the three ancient Morroccan tribes, "Ali," "Bey," or "El," to one's given birth name. *See United States v. Darden*, 70 F.3d 1507, 1516 n.1 (8th Cir. 1995).

> The Moors claim certain rights as a result of the Treaty of Peace and Friendship of 1786, entered into by the United States of America and the Kingdom of Morocco (the "Treaty"). According to the Moors, the Treaty subjects them only to the laws of Morocco, including the taxing provisions. Moreover, the Moors do not believe that African Americans are technically citizens of the United States within the meaning of the United States Constitution as a result of many of the Moors' predecessors being brought to the United States as slaves. Thus, they contend that descendants of slaves are not subject to the laws established pursuant to the Constitution.

*(footnote continued on next page)*

Plaintiff be granted parole. (Doc. 69-5, at 38-39). Although PBPP may grant or deny parole regardless of the DOC's recommendation,³ it is undisputed that a DOC recommendation would maximize Plaintiff's chances of being granted parole. (Doc. 69-5, at 38-39). Furthermore, Plaintiff alleges that PBPP informed him that completion of the treatment program and obtaining a recommendation from the DOC are the only outstanding requirements that Plaintiff has yet to fulfill. (Doc. 69-5, at 38-39).

The DOC specifically recommended that Plaintiff complete the Therapeutic Community ("TC") treatment program, one of the Substance Use Dependency ("SUD") programs at SCI-Coal Township.⁴ (Doc. 69-2, at 6). SCI-Coal Township officials determine whether to recommend an inmate for TC by administering the Texas Christian University ("TCU") drug screen, which queries an inmate's prior alcohol and drug use and dependency.⁵ (Doc. 69-3, at 3-4; Doc. 114-1, at 3). TC is an intensive substance abuse treatment program in which inmates reside together in a separate housing unit of the prison and agree to abide by TC rules. (Doc. 69-3, at 5-6; Doc. 114-1, at 4-6). TC consists of three phases and typically takes approximately four months to complete. (Doc. 114-1, at 6). A focal point of TC rules is that inmates must participate in group therapy and community

---

No. CIV.A. 05-CV-345, 2005 WL 2396311, at *1 n.1 (E.D. Pa. Sept. 28, 2005).

³ In fact, Plaintiff was granted parole with respect to a previous sentence over an objection from the DOC. (Doc. 69-5, at 33).

⁴ The Court takes judicial notice of the DOC's relevant policy statement, Alcohol and Other Drugs Treatment Programs, Policy No. 7.4.1, which has been in effect since January 19, 2006 and is publically available on the DOC's website at www.cor.pa.gov.

⁵ The TCU drug screen does not concern itself with inmates' religious beliefs. (Doc. 69-3, at 3-4).

3

meetings. (Doc. 69-3, at 6; Doc. 114-1, at 134-138, 146). Inmates may choose between a series of self-help programs in TC, including Alcoholics Anonymous ("AA"), Narcotics Anonymous ("NA"), and Self-Management Recovery Training ("SMART"). (Doc. 69-3, at 7; Doc. 114-1, at 4). SMART is a secular program developed as an alternative to twelve-step programs such as AA and NA that contain a spiritual component and require participants to express belief in a "higher power." (Doc. 69-3, at 7; Doc. 114-1, at 5). Inmates participating in SMART receive a workbook that includes skills training for controlling impulses and living a more balanced life. (Doc. 114-1, at 4, 9-121).

Defendants acknowledge, however, that AA and NA are by far the most popular treatment programs, whereas SMART generally only has one or two inmates enrolled at any given time. (Doc. 69-3, at 8-9). As a result, AA and NA members typically meet in groups within the TC unit during the scheduled self-help sessions, whereas any inmates participating in SMART are expected to review their workbook materials individually. (Doc. 69-3, at 8-9). Although Defendants assert that TC itself is nonreligious and does not require inmates to embrace a "higher power" or any form of spirituality (Doc. 69-2, at 4; Doc. 114-1, at 5-7), Plaintiff contends that TC as a whole remains inherently religious because the twelve-step programs predominate over SMART (Doc. 83, at 3-5; Doc. 121-1, at 4-6). For example, Plaintiff alleges that AA and NA hallmarks such as the twelve steps and the serenity prayer were displayed on the walls of the facility, in spite of Defendant Chismar's claim that any posters are "reviewed by TC staff to ensure that inappropriate content and religious content are not included." (Doc. 69-6, at 27; Doc. 114-1, at 6). Furthermore, Plaintiff argues that the TC's own materials and manuals reveal that all inmates are exposed to the twelve-step recovery process when they first join TC (Doc. 70, at

1-2; Doc. 121-1, at 6), whereas Defendants contend that only AA and NA participants must partake in the twelve steps (Doc. 69, at 16; Doc. 69-5, at 25; Doc. 114-1, at 5-6). Finally, Plaintiff alleges that all TC participants must learn and recite a vision statement that professes the need to surrender to the powerlessness of addiction and admit that addiction is a disease of the mind, body, and spirit. (Doc. 114-1, at 4, 10-11).

Plaintiff's opposition to TC is based on his beliefs as a Moorish American. (Doc. 61, at 2). Specifically, Plaintiff notes that the Holy Koran of the Moorish Science Temple of America provides as follows:

> 6. We, as a clean and pure nation descended from the inhabitants of Africa, do not desire to amalgamate or marry into the families of the pale skin nations of Europe. Neither serve the gods of their religion, because our forefathers are the true and divine founders of the first religious creed, for the redemption and salvation of mankind on earth.
>
> 7. Therefore, we are returning the Church and Christianity back to the European nations, as it was prepared by their forefathers for their earthly salvation.

(Doc. 83, at 14). Plaintiff contends that this instruction for Moorish American adherents to avoid amalgamation with "the pale skin nations of Europe" also prohibits the mixing of European literature and ideas. (Doc. 60, at 7). Furthermore, he states that Moorish Americans specifically must stay away from any vestiges of Christianity. (Doc. 83, at 3). Accordingly, the Christian aspects of AA and NA offend Plaintiff's religious beliefs most deeply. (Doc. 69-5, at 20-21).

The original complaint in this matter was filed on December 21, 2010, in which Plaintiff alleged claims against SCI-Coal Township's Superintendant David Varano and SCI-Coal Township employees Chismar, Mike Miller, Ms. Pyar, and Mr. Vivian; chairperson of the Pennsylvania Board of Probation and Parole ("PBPP") Catherine

5

McVey; the PBPP itself; DOC officials Jeffrey Beard and Dorina Varner; and the Pennsylvania Department of Health, Office of Drug and Alcohol Programs ("DOH"). (Doc. 1). Specifically, Plaintiff brought claims under 42 U.S.C. § 1983 for alleged violations of the First Amendment's Establishment and Free Exercise Clauses, a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and various state law claims. (Doc. 1).

     Defendants filed a motion to dismiss Plaintiff's complaint on June 21, 2011 (Doc. 19), which the District Court denied on April 4, 2012 (Doc. 37). Defendants then answered the complaint (Doc. 38), and proceeded with the discovery process. At the close of discovery, both Plaintiff and Defendants filed motions for summary judgment. (Doc. 60; Doc. 67). After reviewing their respective motion papers, the undersigned United States Magistrate Judge recommended that Plaintiff's motion be denied and that Defendants' motion be granted with respect to most claims and Defendants but denied as to the Establishment Clause claims against Defendants Chismar and Vivian. (Doc. 98). On March 29, 2016, the District Court adopted the undersigned Magistrate Judge's Report and Recommendation and granted the parties leave to file additional dispositive motions. (Doc. 104). Defendants then filed the instant supplemental motion for summary judgment on July 12, 2016 (Doc. 113), along with a statement of facts (Doc. 114); a supporting brief (Doc. 115); and several exhibits, including a declaration from Chismar, the SMART workbook, and the DOC's abuse treatment programs procedures manual (Doc. 114-1). On August 18, 2016, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment (Doc. 121), along with exhibits that included various TC materials such as its vision statement and rules (Doc. 121-1). Having been fully briefed, this matter is now ripe for

disposition.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III.    DISCUSSION**

    A. SECTION 1983

Plaintiff brings his remaining claim pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

    **1. A genuine dispute of material fact remains as to Plaintiff's Establishment Clause claims against Chismar and Vivian**

Plaintiff alleges that Defendants violated his constitutional rights by forcing him into a "Hobson's Choice" of either participating in a TC program that has a religious component or suffering adverse effects with respect to his parole eligibility. (Doc. 1). The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend I. The Supreme Court of the United States has stated that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise . . . ." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). The United States Court of Appeals for the Third Circuit recognizes

that "[t]he government violates the First Amendment's Establishment Clause when it requires a prisoner to participate in a drug or alcohol rehabilitation program with a religious component." *Bobko v. Lavan*, 157 F. App'x 516, 518 (3d Cir. 2005 (not precedential). Furthermore, an inmate is deemed to be required to participate in a program if the refusal to participate adversely affects the inmate's parole eligibility. *Bobko*, 157 F. App'x at 517; *Kerr v. Farrey*, 95 F.3d 472, 473-74 (7th Cir. 1996); *Harris v. Risbon*, No. 3:CV-15-0121, 2015 WL 507344, at *2 (M.D. Pa. Feb. 6, 2015); *Martz v. SCI-Coal Twp. Therapeutic Cmty.*, No. 3:11-CV-830, 2013 WL 4761123, at *5 (M.D. Pa. Sept. 4, 2013).

In their initial cross-motions for summary judgment, Plaintiff argued that he was entitled to summary judgment because the TC program is religious in nature, whereas Defendants countered that they were entitled to summary judgment because SCI-Coal Township offers secular programs within TC that serve as non-religious alternatives to twelve-step programs such as AA and NA. (Doc. 61, at 1-2; Doc. 68, at 18-19); *see also Bobko*, 157 F. App'x at 518 (affirming summary judgment in favor of prison officials where the officials submitted evidence that a viable alternative secular approach to recovery was offered within TC program). After reviewing their briefs and evidentiary submissions, the undersigned Magistrate Judge found that neither side sufficiently established that they were entitled to summary judgment as to this Establishment Clause claim. (Doc. 98, at 12-15). Specifically, although Defendants provided a declaration from Vivian in which she states that SCI-Coal Township offers secular self-help programs that do not rely on the existence of a "higher power" as an alternative to traditional twelve-step programs, Plaintiff rebutted the assertion that the secular self-help programs constitute a true alternative by providing evidence that twelve-step programs predominate within TC. (Doc. 98, at 12-15).

9

Nonetheless, this Court found that further discovery and additional dispositive motions may be warranted because the content and features of the secular offerings within TC remained unclear and because the structure of either TC itself or the alternative secular programs offered may have changed during the time since discovery began. (Doc. 98, at 15 & n.8). Defendants now submit their supplemental motion for summary judgment, arguing that TC provides an adequate secular alternative to the twelve-step programs and that TC itself does not have a religious component. (Doc. 115).

Plaintiff does not challenge Defendants' assertion that SMART provides a secular approach to recovery and is available within TC, but Plaintiff nonetheless maintains that SMART is not a comprehensive alternative because elements of religious-oriented programs like AA and NA pervade over TC itself. (Doc. 121-1, at 4-6). For instance, Plaintiff attaches the TC vision statement as an exhibit, which TC participants must recite in order to progress beyond the first phase of TC, and requires inmates to profess the need to "surrender to the powerlessness and unmanageability that addiction has caused" and acknowledge that "[a]ddiction is a three fold disease of body, mind, and spirit." (Doc. 114-1, at 4, 10-11). Plaintiff argues that this terminology mirrors that of the twelve steps, and establishes that TC is inexorably intertwined with and favors AA/NA, to the detriment of inmates seeking a truly secular program. (Doc. 121-1, at 6). Furthermore, among his earlier filings, Plaintiff produced an excerpt from the TC program operations manual, which listed among the goals for inmates upon joining TC that they be "educated to the disease of addiction and the process of recovery in a 12-step program." (Doc. 70, at 2). Plaintiff also alleged in his deposition that religious content such as the twelve steps and the serenity prayer are posted on the walls of the TC facility (Doc. 69-6, at 27), although Chismar states in her declaration

that the motivational posters in TC's common area are created by the inmates themselves and reviewed by TC staff to insure that they do not include any religious content. (Doc. 114-1, at 6).

The Court finds that a genuine dispute of material fact still exists as to whether the TC program at SCI-Coal Township contains a religious component in violation of the Establishment Clause of the First Amendment. As a preliminary matter, Defendants do not dispute the sincerity of Plaintiff's religious beliefs or that Plaintiff's refusal to complete TC adversely affects his parole eligibility. Defendants instead assert that they are entitled to summary judgment on the basis that TC does not have any religious component. (Doc. 115, at 5 ("The TC program itself is secular, in that it does not require any participant to believe in or profess to rely upon or embrace any type of 'higher power' or spirituality in order to complete the program.")). However, in construing all facts and inferences in Plaintiff's favor, the Court finds that the existence of the SMART program and workbook are insufficient to establish that requiring Plaintiff to complete TC as a condition of parole does not violate Plaintiff's First Amendment rights.

Plaintiff has submitted supporting evidence to create a question of material fact as to whether SMART is a viable alternative to the alleged faith-based portions of the TC program. This evidence includes Plaintiff's allegations that: (1) AA/NA posters containing the serenity prayer and the twelve steps are present on the walls of the TC communal area; (2) all TC participants must recite a vision statement that includes references to surrendering to one's own powerlessness and admitting that addiction is a disease of the spirit; and (3) according to the TC manual, all TC participants are to learn about the twelve steps. (Doc. 69-6, at 27; Doc. 70, at 2; Doc. 121-1, at 6). None of these elements appear to be avoidable

for inmates participating in SMART. Moreover, all TC participants are required to attend and take part in group meetings, but SMART appears limited to self-study through the workbook activities. (Doc. 121-1, at 14, 16). Although the SMART workbook may be fairly detailed, TC inmates participating in SMART still must complete numerous other obligations unrelated to SMART in order to progress through TC's three phases. (Doc. 121-1, at 11, 14, 16). Because SMART only has one or two enrollees at any given time, those enrollees must attend group meetings dominated by AA and NA participants. (Doc. 69-3, at 8-9). The fact that SMART may only exist in workbook form while AA and NA appear to be much more comprehensive programs—coupled with Plaintiff's claim that the serenity prayer and the twelve steps were posted on the walls of TC's common area—creates the impression that Defendants may favor AA and other spiritual programs over any secular alternatives. *See Lee*, 505 U.S. at 627 (Souter, J., concurring) ("This principle against favoritism and endorsement has become the foundation of Establishment Clause jurisprudence . . . ."); *see also Martz*, 2013 WL 4761123, at *5 (denying summary judgment on First Amendment Establishment Clause claim where SCI-Coal Township prisoner-plaintiff raised a dispute of material fact as to whether SMART constituted a bona fide alternative program to the faith-based aspects of TC or really only existed on paper). Accordingly, the availability of SMART workbooks is an inadequate alternative to a TC program that allegedly contains religious elements. *See Harris*, 2015 WL 507344, at *2 (finding that TC violated Establishment Clause because it contained religious components borrowed from AA and NA, such as AA/NA posters present in the communal living area, counselors who referred to AA/NA teachings, and readings at mandatory group meetings that referenced the existence of a higher power). If, as Plaintiff alleges, elements of AA and

NA are heavily incorporated into the TC program in general, then the existence of SMART would not prevent Plaintiff from being exposed to religious content. (Doc. 121-1, at 6). Accordingly, the Court recommends that Plaintiff's Establishment Clause claim be allowed to proceed and that Defendants' supplemental motion for summary judgment be denied.

### IV.  RECOMMENDATION

Based on the foregoing, it is recommended that Defendants' supplemental motion for summary judgment (Doc. 113) be **DENIED** and that the case be remanded to the undersigned Magistrate Judge for further proceedings.

BY THE COURT:

**Dated: December 15, 2016**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES WILLIAMS BEY,<br><br>             Plaintiff<br><br>    v.<br><br>PENNSYLVANIA BOARD OF<br>PROBATION AND PAROLE, et al.,<br><br>             Defendants | CIVIL ACTION NO. 1:10-CV-02597<br><br>    (CAPUTO, J.)<br>    (MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 15, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: December 15, 2016**                                           *s/ Karoline Mehalchick*
                                                                                               **KAROLINE MEHALCHICK**
                                                                                                **United States Magistrate Judge**